```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA

              CASE NO. 07-60654-CIV-ZLOCH

UTOPIA PROVIDER SYSTEMS, INC.,
a/k/a UTOPIA PROVIDERS SYSTEMS,
INC.,

        Plaintiff,

vs.                                       O R D E R

PRO-MED CLINICAL SYSTEMS,
L.L.C., and THOMAS L.
GROSSJUNG,

        Defendants.
_____/
```

THIS MATTER is before the Court upon Plaintiff's Motion For Summary Judgment (DE 97) and Defendants' Motion For Partial Summary Judgment (DE 112). The Court has carefully reviewed said Motions and the entire court file and is otherwise fully advised in the premises.

Plaintiff Utopia Provider Systems, Inc. initiated the above-styled cause with the filing of its Complaint alleging violations of the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq. (2006), and Florida state law. The Parties filed cross motions for summary judgment. The essence of Plaintiff's argument is that it holds a valid copyright in a set of charts used by emergency room physicians, collectively entitled ED Maximus, and that Defendants infringed it. Defendants take the position that Plaintiff's work is not copyrightable and, in the alternative, that there was no infringement. For the reasons expressed more fully below, the

Court finds that Plaintiff's work does not qualify for copyright protection.  For that reason, Defendants' instant Motion (DE 112) will be granted, and Plaintiff's instant Motion (DE 97) will be denied.

## I. Background

Plaintiff is a corporation formed to own and manage the rights in a product called ED Maximus, a system of charts or templates for use by emergency room physicians.[1]  A full set of charts is attached as Exhibit A-1 to Plaintiff's Notice Of Filing (DE 100).[2]  The charts speak for themselves as far as their content, organization, and layout are concerned; however, for the benefit of the Parties and any reviewing court, the Court provides the following brief description.  The charts as a whole act as an integrated system for efficiently documenting a patient's symptoms, and the physician's conclusions and directions to the patient.  ED Maximus is made up of numerous two- or three-page sets of charts, each useful for a particular type of ailment, such as chest pain, burns, head injury, pregnancy related problems, etc.  Other than what necessarily differs chart to chart based on the nature of the ailment addressed, each chart is identical.  They consist of blocks in which to record information from the patient: The top block

---

[1] Unless otherwise noted, these facts are taken from Plaintiff's Statement Of Material Facts In Support Of Its Motion For Summary Judgment (DE 99) and are undisputed.

[2] See also DE 115, Ex. 19.

calls for personal data such as name, date of birth, and chief complaint.  The next block calls for information on the present illness, such as how long it has been present, the quality of the pain, what exacerbates it, what relieves it, etc.  The next block calls for information on the present state of all the patient's body systems.  The next block calls for information about the patient's medical and social history.  The next two blocks, on page two, call for information to be input as part of the actual exam done for the problem presented and the decisions made by the physician.  These blocks change based on the particular illness to be addressed using the chart.  The final blocks allow for information to be input for clinical impressions, consultations with other doctors, and discharge instructions.  See generally DE 100, Ex. A-1.  Each of the blocks on the charts contains blanks to be filled in by the physician with the relevant information.  The line item blanks each have a word or two identifying what information should be placed there.

   The ED Maximus charts were created by Plaintiff's principals, Joshua Plummer and Dr. Michael McHale.  Plummer and McHale filed the ED Maximus charts with the United States Copyright Office, which issued a certificate of registration on October 29, 2001. Plaintiff and Defendants entered into a license agreement that gave Defendant the right to market ED Maximus to hospitals throughout the United States in exchange for royalty payments to be made to

Plaintiff.  During the period of the license agreement, alongside of its marketing of the ED Maximus system, Defendant developed its Electronic Physician Documentation system (hereinafter "EPD"), an electronic template system similar to ED Maximus in its intended use and content.  Defendant marketed EPD without paying royalties to Plaintiff based on the license agreement.  The license agreement expired on October 1, 2006, after unsuccessful efforts to renegotiate the terms and renew the contract.

Plaintiff initiated this action alleging that Defendants' development and sales of EPD have infringed on its copyright in ED Maximus.  Plaintiff also sought relief for Defendants' alleged breach of the license agreement and breach of fiduciary duties.  By prior Order (DE 146), the Court dismissed without prejudice Counts 2 and 3 of Plaintiff's Third Amended Complaint (DE 86) because they involved questions of Florida state law that would predominate over the federal copyright claim at issue.  Thus, only the federal Copyright claim in Count 1 remains pending.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials
> on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578,

4

1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation omitted). Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

5

III. Analysis

The sole Count left for disposition is the copyright claim in Count 1 of Plaintiff's Third Amended Complaint (DE 86). Plaintiff claims that Defendants infringed on its federally protected copyright interest in the ED Maximus charts. Defendants' principal argument in response is that Plaintiff's ED Maximus product is not entitled to copyright protection. In the alternative, they argue that their EPD software does not infringe on Plaintiff's rights. In light of the Court's finding below that Plaintiff's ED Maximus charts are not entitled to copyright protection, Defendants' actions with respect to them will not be addressed.

A.

To prove copyright infringement, Plaintiff must establish ownership of a valid copyright in its ED Maximus charts. Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). In any case alleging an infringement of a copyright, the copyrightability of the work in question is the threshold issue. 3 Nimmer on Copyright § 12.10 (2008). For works created after 1977, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). In 2001, the United States Copyright Office issued a certificate of registration for Plaintiff's work, entitled "ED Maximus." DE 96, Ex. A, ¶ 17.

A certificate of registration from the United States Copyright

6

Office is prima facie evidence of the copyrightability of a work. Southern Bell Tel. and Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801, 811 (11th Cir. 1985); 4 Nimmer on Copyright § 13.01. But "a certificate of registration creates no irrebuttable presumption of copyright validity." Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980). That is, even in the face of a registration from the Copyright Office, "[w]here other evidence in the record casts doubt on the question, validity will not be assumed." Id.; see also Norris Indus. v. Int'l Tel. Corp., 696 F.2d 918, 922 (11th Cir. 1983) (approving the district court's reliance on the Copyright Office's decision to register a copyright but noting that "[t]his is not to say that the court should simply accept the Register's decision without question").

Aside from the official certificate of registration, courts will examine the nature of the work itself to help answer the question as to copyrightability. Durham Indus., 630 F.2d at 908 (noting that "the mute testimony of Mickey, Donald and Pluto themselves" necessitates an adverse determination). The Parties do not dispute the content of Plaintiff's ED Maximus work and no question remains that it is the product of Plaintiff, through its principals. See DE 157. Thus, there is no mixed question of fact and law presented as to copyrightability. In that case the Court is free to look at the work in question and draw its own conclusion

7

on the question of whether the work is properly protected by copyright.  See Gaiman v. McFarlane, 360 F.3d 644, 648 (7th Cir. 2004) (noting a Circuit split on the question of whether copyrightability is a pure question of law or involves mixed questions of fact and law, the latter usually involving questions as to the originality of a work).  Therefore, taking due account that the Copyright Office issued a certificate of registration and that this is evidence of the work's copyrightability, the Court turns to the question of whether Plaintiff's ED Maximus is sufficiently original to merit copyright protection.

B.

Plaintiff's ED Maximus is a work of a literary nature, registered and described by the Parties herein as a compilation of terms.  A compilation is defined by the Copyright Act as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  Plaintiff's work is not a compilation of materials; rather, it is of words.  Therefore, to qualify as a compilation, according to § 101, it must be a compilation of data.  Id.

When compilations of literary material are addressed by the courts, it is always a compilation of data, sometimes spoken of as "facts."  Id.; see, e.g., Feist Publications, 499 U.S. at 345

("[I]t is beyond dispute that compilations of facts are within the subject matter of copyright.").[3]  Works that compile words, but that do not compile facts, are not copyrightable.  Thus, "works not subject to copyright" include "[b]lank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information."  37 C.F.R. § 202.1(b) (2008).  What sets compilations of facts apart from blank forms is the conveyance of information.  Because copyright protects the expression of ideas, or original works of authorship, something must be put down on the page to qualify for protection.  That something must be of an original and, in this case, literary nature.  Feist Publications, 499 U.S. at 345 (noting that the sine qua non of copyright is the authorship of an original work).  If the import of a page, even with words and

---

[3] See also Feist Publications, 499 U.S. at 350 ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection and arrangement.") (emphasis removed); Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509 (11th Cir. 1997) (en banc) (directory of cable service providers); BellSouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 999 F.2d 1436, 1441 (11th Cir. 1993) (en banc) ("The protection of copyright must inhere in a creatively original selection of facts to be reported and not in the creative means used to discover those facts.") (second emphasis added); Worth v. Selchow & Righter Co., 827 F.2d 569 (9th Cir. 1987) (encyclopedia of trivia); Corwin v. Walt Disney Co., 475 F.3d 1239, 1251 n.8 (11th Cir. 2007) ("We have also recognized that a selection, arrangement, or organization of facts is copyrightable as a compilation if sufficiently original.") (citation omitted).

9

phrases pre-marked on it, is to act as a mere receptacle for information input by the reader, it is not the proper subject of copyright protection. "It is well-established that blank forms which do not convey information or contain original pictorial expression are not copyrightable." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 971 (11th Cir. 1983). Rather, the law analyzes blank forms not as original works of authorship but as "systems" for recording information. See Baker v. Selden, 101 U.S. 99 (1879) (holding that copyright protection in a work on bookkeeping did not extend to accounting forms "ruled and arranged as designated by [the author] and described and illustrated in said book"); John H. Harland Co. v. Clarke Checks, Inc., 1980 WL 1183 *3 (N.D. Ga. 1980) ("What the plaintiff's [check stub] product actually represents is a new system for recording checkbook entries. As such, it is not subject to copyright protection."), aff'd 711 F.2d 966. Such a system for recording information is not contemplated under the rubric of copyright. "In no case does copyright protection for an original work of authorship extend to any . . . procedure, process, system, [or] method of operation . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b); see also 37 C.F.R. § 202.1 (interpreting the Copyright Act to withhold protection from works "designed for recording information and [that] do not in themselves convey information").

Plaintiff's ED Maximus work is a set of charts to be used by physicians when taking a patient's medical history and listing present symptoms. The charts contain blanks calling for information to be filled in with the patient's unique medical information. For example, the charts contain a box titled "History of Present Illness" that has blanks that can be filled in with information from the patient in the following categories: Timing, Duration, Location, Quality, Severity, Context, Exacerbated by, Associated Signs and Symptoms. See, e.g., DE 100, Ex. A-1, p. 2. All other charts likewise contain blanks and areas to record the patient's present physical state. Thus, the charts are not truly a compilation of facts or data. Rather they are forms for the taking down of information.

The cases cited above for the proposition that literary compilations are always compilations of facts deal directly with whether the efforts of the plaintiffs therein deserve protection. Even so, the works at issue always contained facts of interest to a reader, whether a telephone directory, a directory of cable service providers, or an encyclopedia of trivia. Plaintiff's ED Maximus charts are at the opposite end of the spectrum: The facts of interest to the physicians using the charts are held by the patient until discovered and recorded by the physician in a medical consultation. The charts waiting ready to record the information provided are not a compilation of facts. To be sure, a review of

Plaintiff's ED Maximus charts will convey certain information to the reader, for example the names of the body systems (endocrine, cardiovascular, respiratory, etc.). Yet the charts are not meant to be an organized display of preexisting data. Rather, they are meant to act as a template on which to enter the data. In gross simplification: The patient's _____ hurts, has been hurting for _____ days, and the pain is of a _____ nature. Before blanks such as these are filled in, the words surrounding them convey no information.

Blank forms receive no protection under the Copyright Act. 37 C.F.R. § 202.1(b). In 1879 the Supreme Court explained the limits of copyright protection with reference to blank forms. In Baker v. Selden, 101 U.S. 99, the Court sustained the extension of copyright protection to the whole of the plaintiff's work on bookkeeping with the exception of the accounting forms included in an appendix. Specifically, the Court ruled that a copyright held in the treatise on bookkeeping does not extend to "the peculiar system of bookkeeping" that is "illustrated . . . by means of ruled lines and blank columns, with proper headings on a page, or on successive pages."  101 U.S. at 104. The Court went to great length to distinguish between the copyrightable text of the treatise on bookkeeping and the system of recording numbers and data memorialized in the forms. The latter goes unprotected. Id. at 101-03.

More recently, the Eleventh Circuit explained its position on blank forms. In John H. Harland Co., 711 F.2d 966, the court refused to grant copyright protection to the check stubs, noting that they "merely provide[] lines on which the check writer can record the date, the dollar amount of the check, the payee of the check, and the purpose of the check." John H. Harland Co., 711 F.2d at 972. Because the stub was "merely designed for recording information and does not convey information or contain original pictorial expression," id., the Eleventh Circuit refused to protect it.

The instant action is not meaningfully distinguishable from either Baker or John H. Harland Co. The charts and forms that make up Plaintiff's ED Maximus work are not the proper subject of copyright protection because they embody Plaintiff's system for a physician's consultation with a patient.[4] Just as a bookkeeper would turn to the accounting forms in Baker for reference and guidance in bookkeeping, so do physicians use Plaintiff's charts to organize their medical practice. But the charts themselves do not convey information in the manner contemplated by the applicable laws and regulations. 17 U.S.C. § 102(b); 37 C.F.R. § 202.1. Moreover, though different in size and concept, Plaintiff's ED Maximus charts are no different qualitatively than the stub of a

---

[4] In fact, Plaintiff refers to its product as a "template system." DE 99, ¶ 25 (noting the sale to hospitals of "the [ED] Maximus template system").

check at issue in John H. Harland Co.  The fact that Plaintiff's ED Maximus work is much more extensive than a check stub does not make it different in kind.  There is simply less happening on a bank check than in the human body, and thus more blank forms are required for the latter.  That fact alone cannot grant protection to Plaintiff's work, dealing with the body, when a bank check stub is non-copyrightable.  John H. Harland Co., 711 F.2d at 972.[5]

Forms used by physicians in the treatment of patients have in the past received the protection of the copyright laws.  In Norton Printing Co. v. Augustana Hosp., 155 U.S.P.Q. 133 (N.D. Ill. 1967), the court noted that the "quite detailed" medical forms "contain many separate categories and areas for examination."  Id. at 135.  Thus, the court noted "[c]ertainly, they are used to record information."  Id.  However, with respect to those forms the court stated that "the format and arrangement used, together with the different boxes and terms, can also serve to convey information as to the type of tests to be conducted and the information which is deemed important."  Id.  Thus, the medical forms were deemed sufficiently original to be protected.

The medical forms at issue and as described in Norton Printing

---

[5] The Court's ruling announced herein--that Plaintiff's ED Maximus work is not a proper subject of copyright protection--should not be read as downplaying the efforts that went into producing it.  Clearly, the charts are exhaustive and no doubt took considerable and admirable effort to compile and organize, but copyright protection for the "sweat of the brow" was eliminated long ago.  See Feist Publications, 499 U.S. at 352-60.

differ from Plaintiff's ED Maximus here, at least according to the Parties.  In its briefing, Plaintiff does not argue that the ED Maximus forms are arranged in a way "to convey information as to the type of tests to be conducted and the information which is deemed important."  Id.  In support of its argument that its work is copyrightable, Plaintiff only argues that its selection and arrangement of terms is sufficiently original to merit protection as a compilation of terms.  Moreover, Dr. Michael McHale, one of Plaintiff's principals who designed and created the ED Maximus charts, testified as follows regarding the function of such charts:

> Q. What are the functions of physician documentation templates?
>
> . . . .
>
> A. It is to capture a patient encounter.
>
> Q. You would agree with me that the purpose or rather the function of the template is to record the information gathered during that encounter.  Correct?
>
> A. Capture, yeah.
>
> Q. In other words, a template doesn't drive the encounter, it only captures the results of the encounter. Correct?
>
> A. No, it can prompt.
>
> Q. Do you think templates should prompt?
>
> . . . .
>
> A. I think that is a personal opinion.
>
> Q. I am asking your personal opinion.
>
> A. Well, it has to serve as, you know, a couple, you

know, basics.  People buy templates so they do many things.  The important thing is to capture the patient encounter, but you've got to worry about billing, coding, medical legal aspects of the form.  So, some people need to be prompted to be sure they capture all that.

Q. Let's be clear about this.  The template can act as a prompt to capture information.  Are you suggesting that in addition the template is a prompt to provide adequate medical care in the emergency department?

A. Can you repeat that last part?

Q. Sure, I will try to be a little more artful.

A. Go ahead.

Q. I think you understand what I am asking but I will ask it a better way.  With regard to the prompting you described that can result from using a paper template, that prompting relates to capturing information, not adequately addressing the needs of the patient.  Correct?

A. Two separate issues.

Q. Do you think it does the latter as well?

A. I don't think it has anything to do with the actual patient care.

Q. Okay.  Please explain that.

A. The practice of medicine is an art and science.  We are talking a [sic] documentation form that you are capturing an encounter on.  So, I don't think there is any documentation to help anyone practice medicine.

Q. Okay. So, a physician documentation template doesn't prompt the physician to adequately care for the patient.  Rather, it prompts the physician to capture the information that derives from providing that care.  Correct?

A. Correct.

Deposition of Dr. Michael McHale, DE 115-25, pp. 154-56.  Thus, the ED Maximus charts do not inform the physician about anything.

16

Rather, the physicians using the charts are expected to know what information from the patient is important and what tests ought to be run. Id. at 155 ("I don't think it has anything to do with the actual patient care."). Those decisions can be made after analyzing the information obtained from the patient. It is the ED Maximus charts that allow the information to be recorded in an orderly fashion. They are a receptacle for information, not a compilation of data or facts; the ED Maximus charts do not themselves convey information to the physician. This fact distinguishes Norton Printing, 155 U.S.P.Q. 133, from the case at hand, and the Court therefore declines to follow the same.

## IV. Conclusion

The Court finds that Plaintiff's ED Maximus charts are not properly the subject of copyright protection because they are not a compilation of terms, the only ground advanced for their copyrightability. Thus, no genuine issue of material fact remains for trial, and Defendants are entitled to judgment as a matter of law as to Count 1 of the Third Amended Complaint (DE 86).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion For Summary Judgment (DE 97) be and the same is hereby **DENIED;**

2. Defendants' Motion For Partial Summary Judgment (DE 112) be and the same is hereby **GRANTED;** and

3. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this   2nd    day of February, 2009.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record